## SABINE COLLIERIES CORPORATION v. BEVERAGE.

(Circuit Court of Appeals, Fourth Circuit. June 18, 1924.)

No. 2225.

Evidence ⬤⟶441 (6)—Evidence of prior parol agreement held ineffective to change later written contract.

Where there was a written contract fixing the salary of the general manager of a corporation, evidenced by a resolution of its board of directors and a letter of acceptance by the manager, followed by payment and acceptance of that salary thereafter, evidence of a prior parol agreement by the president for a higher salary, which was never paid, even assuming the president's authority to make it, and that it was established by the testimony, which was in conflict, is without legal effect to supplant or change the later contract, which was carried into execution.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action at law by Agnes Beverage, administratrix of the estate of A. Beverage, deceased, against the Sabine Collieries Corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

Ashton File, of Beckley, W. Va., and E. Randolph Williams, of Richmond, Va. (Munford, Hunton, Williams & Anderson, of Richmond, Va., and W. W. Goldsmith, of Beckley, W. Va., on the brief), for plaintiff in error.

Harold A. Ritz, of Charleston, W. Va. (Grover C. Worrell, of Mullens, W. Va., on the brief), for defendant in error.

Before WADDILL and ROSE, Circuit Judges, and SMITH, District Judge.

SMITH, District Judge. The declaration in this action is in assumpsit for the recovery by the plaintiff below, Agnes Beverage, as administratrix of her husband, Alexander Beverage, of a sum of money alleged to have been due by the defendant, the Sabine Collieries Corporation, to her husband for personal services. The original declaration, filed May 7, 1923, contained three counts, one on a promise to pay $40,000 for services, one on a promise for a quantum meruit for services, alleged to be worth $40,000, and one on a promise to deliver for services a certificate of stock for $25,000 (alleged to be worth $40,000) in the capital stock of the corporation. The statement of account filed with this declaration, and as a part of it, is:

"To services rendered by A. Beverage, during the years 1917 and 1918—$40,000."

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Thereafter on December 8, 1923, the plaintiff, after leave therefor, filed an amended declaration, and account, and bill of particulars. The amended declaration contained two counts, one on a promise to pay $40,-000 for services, and one on a promise to pay Beverage the salary he was then (to wit, June 1, 1918) receiving, alleged to be $4,000 per annum, and in addition to deliver him a certificate of stock for $25,000, at par, in the capital stock of the corporation, alleged to be worth $40,000. The account and bill of particulars filed with this amended declaration is as follows:

To salary and compensation of plaintiff's intestate from June 1, 1918, to December 1. 1919, one year and six months, at ten thousand ($10,000 00) dollars per year   $15,000.00

Credit.

By amount paid on above account   6,000 00

Balance   $9,000.00

This balance of $9,000 the plaintiff claimed to recover under an alleged agreement between Beverage and the defendant on June 1, 1918, that Beverage should be paid a salary of $10,000 per annum in monthly installments, or that he should receive $25,000 at par in stock of the corporation and continue to receive the same salary (alleged to be $4,000 per annum) he was then receiving. The defendant corporation pleaded non assumpsit and on issue joined the action was tried before a jury.

The witnesses for plaintiff were the plaintiff herself, her son, her daughter, and her son-in-law. The testimony on behalf of the plaintiff is to the effect that in June, 1918, a verbal agreement had been made between one Sitterding, the president of the corporation, and Beverage, whereby Sitterding agreed that, in consideration of Beverage remaining in the employ of the corporation as its general manager, he was to receive the sum of $150 per month in addition to the salary he was then receiving, and was also to receive $25,000 at par in the capital stock of the corporation. There is an entire failure of evidence on the plaintiff's part to prove the contract as set up in the declaration, statements, and bills of particulars. There is no evidence as to any promise to pay $10,000 per annum, or the alternate promise to issue Beverage the stock for $25,000. According to the plaintiff's verbal testimony the promise was an entire one to pay Beverage $150 per month in addition to the monthly sum he was then receiving and also to issue to him $25,000 in stock at par of the capital stock of the corporation.

The material testimony introduced by the defendant corporation was: The denial by Sitterding that any such promise had been made; the proof that in June, 1918, Beverage's compensation was $275 per month; the proof that under the by-laws the president had no power to make any such promise; the proof that on August 1, 1918, Beverage's salary was increased to $300 per month, which Beverage received without objection; the proof that on April 26, 1919, the board of directors at a meeting duly held increased Beverage's salary to $4,000 per annum from May 1, 1919, payable in equal monthly installments; the proof that Beverage was notified in writing both by Sitterding and the secretary of the corporation of this action of the board, and in writing

acknowledged it, with thanks; the proof that subsequent to May, 1919, Beverage was paid the increased salary of $4,000 per annum in monthly installments of $333.33 and acknowledged receipt thereof on a written voucher, declaring the same to be in full settlement for his services for the month.

The serious question whether, under the circumstances of this case, the president of the corporation could have bound the corporation to issue to Beverage the $25,000 in stock of the corporation on an agreement so indefinite as that detailed in the plaintiff's testimony need not be considered. At the trial the plaintiff withdrew all claim to this stock, and rested her case wholly on her right to recover $150 per month additional to the salary of $275 Beverage was receiving in June, 1918. The presiding judge sent the case to the jury on two issues:

(1) Under the testimony, had the defendant corporation held out Sitterding as possessing the power to make the promise, so as to debar the corporation from denying it?

(2) Had the corporation, through its president, Sitterding, so authorized, actually agreed with Beverage to pay him $150 per month after July 1, 1918, additional to the salary he was then receiving?

The essential question before this court is: Was the learned presiding judge in error in submitting the second issue to the jury? The evidence shows, according to the witnesses for the plaintiff, that this alleged agreement was made in June, 1918, this alleged verbal contract to raise the salary of Beverage by $150 per month. Beverage at that time admittedly received but $275 per month. Subsequent to this, viz. in April, 1919, the board of directors at an official meeting acted, and raised his salary, *not* to $150 in addition to $275, which would have been $425 a month, or $5,100 a year, *but* to $4,000 a year, or $333.33 per month. This was done months subsequently to the alleged verbal agreement. Information of the action of the board of directors was conveyed to Beverage; he admitted receiving that information, thanked the board of directors for its action, and thereafter received without objection his salary at the rate of $333.33 each month, and gave a written acknowledgment in the form of a receipt in full.

The general rule is that all preceding verbal negotiations and understandings are embraced in, and finally terminated and represented by, a subsequent written agreement, unless the contrary be clearly shown. The subsequent written agreement is for $4,000 a year only, and so far from there being any clear proof that this did not represent the final agreement, and was in fulfillment of all previous verbal statements and understandings, and finally represented and determined the understanding of the parties, there is the corroborative circumstance that Beverage without objection of any kind continued to receive his monthly payment of $333.33, being an advance over the salary that he received in June, 1918, and signed in writing his declaration that was in full of the amount due to him. Under these circumstances, in the opinion of the court, the testimony not only failed to support the contract set up and alleged in the declaration, upon which the plaintiff in this case should recover, but failed to establish any enforceable contract in this case on the part of the defendant corporation to Bever-

age, save for the monthly payment to him from the 1st of May, 1919, of $333.33, which has been paid. The conflict of testimony was upon the agreement entered into between Sitterding and Beverage in June, 1918. There was practically no other conflict of testimony on that point of a substantial character.

Giving to the verdict of the jury its full significance, it cannot go beyond establishing that at that interview Sitterding did make the promises alleged in the testimony for the plaintiff. Assuming that he did, what significance of a legal character has that agreement as against the later agreement made in April, 1919? The later agreement is in writing. It is contained in the written resolution of the board of directors, the letters to Beverage from Brown and Sitterding, and Beverage's letters to Brown and Sitterding. Which should by the rule of law control—the prior verbal unexecuted agreement of June, 1918, or the later written agreement, put in execution, accepted, and acted upon by both parties? It appears to the court that under the circumstances of this case the later written agreement should as matter of law control.

In the opinion of the court the learned judge below should under the evidence at the trial have granted the motion to direct a verdict for the defendant, and the judgment below is accordingly reversed, and the case remanded, with instructions to the court below to grant a new trial.

Reversed.